CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAR 2 5 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIE JUNIOR MCCAIN,<br>    Petitioner, | )<br>)<br>) |
| v. | )   Case No. 7:07-cv-00301 |
| | ) |
| UNITED STATES OF AMERICA,<br>    Respondent. | )   By: Hon. Michael F. Urbanski<br>)   United States Magistrate Judge |

### REPORT AND RECOMMENDATION

Petitioner Willie Junior McCain ("McCain") brings this action under 28 U.S.C. § 2255, alleging that counsel provided ineffective assistance in that (1) he failed to object to several convictions in the Pre-Sentence Investigation Report ("PSR"); and (2) he failed to file an appeal. By Memorandum Opinion and Order entered October 22, 2007, the court found that it was unable to resolve the issue of whether trial counsel, Jeffrey L. Dorsey ("Dorsey"), was ineffective in failing to file an appeal on the existing record and, therefore, ordered an evidentiary hearing on the same.[1] By separate Order entered the same day, the court referred this matter to the undersigned Magistrate Judge to hold an evidentiary hearing and submit proposed findings of fact and a recommended disposition. An evidentiary hearing was conducted on February 27, 2008.[2]

Based on the evidentiary hearing testimony, the transcript of McCain's guilty plea and sentencing hearings, and the information contained in the PSR, the undersigned concludes that

---

[1] The court declined to address McCain's other ineffective assistance of counsel claims, finding that if counsel was ineffective for failing to file a notice of appeal, all other claims should be dismissed without prejudice. However, as the undersigned finds counsel was not ineffective on the appeal issue, McCain's remaining claims are addressed herein.

[2] At the conclusion of the hearing, the undersigned granted McCain's counsel an additional ten days in which to locate and interview a potential witness that could allegedly corroborate certain portions of McCain's evidentiary hearing testimony. The ten days expired on March 18, 2008, and no status report or additional evidence has been submitted. Thus, this matter is ripe for decision.

McCain has not met his burden of proving that Dorsey was ineffective for failing to file a notice of appeal. McCain has failed to present any credible evidence suggesting that he instructed trial counsel to file a notice of appeal. Simply put, McCain's counsel, under oath, stated that he consulted with McCain and that he was not requested to file an appeal on McCain's behalf, and the undersigned accepts his statement as credible and finds that McCain's claim is not credible. Additionally, the undersigned finds that McCain's remaining grounds for relief are without merit. Therefore, the undersigned recommends that respondent's motion to dismiss be granted and McCain's petition for relief be dismissed.

## I.

On April 7, 2005, a federal grand jury returned a one-count indictment against McCain charging him with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(3).[3] Because McCain had previously been convicted of other violent crimes, the indictment put him on notice that he was considered to be an "armed career criminal" and would be subject to a sentence enhancement, pursuant to 18 U.S.C. § 924(e)(1). McCain's jury trial began on March 9, 2006; however, after opening statements were made, McCain changed his plea from not

---

[3] The United States Attorney notes that the indictment mistakenly cited 18 U.S.C. § 922(g)(3) rather than § 922(g)(1) as the statutory authority for charging McCain. Section (3) indicates that it shall be unlawful for anyone who is an unlawful user of or addicted to any controlled substance to possess a firearm while section (1) indicates that it shall be unlawful for anyone who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to possess a firearm. In his response brief, McCain contends that this "prejudice[d] [his] inalienable right to be properly informed in the indictment." (Pet'r Resp. at 3.) Despite the typographical error, the indictment expressly charged McCain with possession of a firearm after having been previously convicted of a felony. Thus, the undersigned finds that McCain was afforded sufficient notice of the charge against him and that he was not prejudiced by the error. See United States v. Downer, 143 F.3d 819, 823 (4th Cir. 1998) (noting that Federal Rule of Criminal Procedure 7(c)(3) provides that an error in the indictment's citation of a statute is harmless if it does not mislead the defendant to the defendant's prejudice); United States v. Lanier, 201 F.3d 842, 847 (6th Cir. 2000) (indictment not rendered insufficient where the indictment contained a typographical error in that it referred to the statute as 18 U.S.C. § 1346 rather than 18 U.S.C. § 3146); United States v. Field, 875 F.2d 130, 133 (7th Cir.1989) (where an error in an indictment does not go to an element of the crime, but rather is typographical in nature, a defendant is not prejudiced).

guilty to guilty. On that same date, by oral plea agreement, McCain pleaded guilty to Count One of the indictment. In exchange for his plea of guilty, the United States agreed that it would recommend a sentence within the guideline range, that it would recommend that McCain receive credit for acceptance of responsibility, and that McCain could argue for the minimum sentence to be imposed.[4] Finding that McCain was fully competent and capable of entering an informed plea and that his guilty plea was knowing and voluntary, the court accepted his plea at the conclusion of the hearing.

The evidence presented[5] at the guilty plea hearing established that on August 26, 2004, Shannon Jordan left his residence and returned to find a blue Chevrolet pick-up truck in his driveway. Jordan did not know anyone that owned this vehicle or why it was at his home. As Jordan exited his vehicle to examine the situation, he noticed a black male carrying duffle bags from the rear of the residence. The unidentified male began to run when he observed Jordan. However, he subsequently stopped, pointed a pistol at Jordan, and instructed him to leave the residence. Jordan got back into his vehicle and left, as instructed, but followed the assailant's blue pick-up truck once it left the residence. Jordan eventually lost sight of the truck and contacted the Halifax County Sheriff's Office. Deputies were provided with a description of the truck and informed that a shotgun and pistol had been stolen from Jordan's residence along with other items. A joint investigation by the Halifax County Sheriff's Office and Person County, North Carolina Sheriff's Office led to the development of Willie Junior McCain as a suspect. The type of pickup truck used in the burglary

---

[4] The United States Attorney specifically noted, "[h]is attorney will be free to ask the Court, on his behalf, to consider sentencing the defendant at a minimum of 15 years, if the defendant turns out to be an armed career criminal." (Transcript of Guilty Plea Hearing, March 9, 2006 [hereinafter Guilty Plea Hr. Tr.] at 2.)

[5] It was stipulated at the guilty plea hearing that the government's opening statement established the government's evidence. A transcript of the government's opening statement is not available, accordingly, the undersigned bases his factual recitation on information from the PSR.

matched McCain's vehicle. Also, when Person County authorities seized a firearm, matching the description of the stolen pistol, from a local drug dealer, the dealer informed officers that he had purchased the firearm from Willie McCain. Deputies later located McCain's truck at an apartment complex in Roxboro, North Carolina. In a trash dumpster directly adjacent to the truck, officers found two duffel bags later identified as the ones stolen from the residence. McCain was arrested for the instant offense and led officers to the shotgun stolen from the home.

During the sentencing hearing on June 22, 2006, the defense noted no objections to the PSR. The PSR established that McCain had a subtotal offense level of 28 and a criminal history category of VI. PSR ¶ 17, 60. However, since the offense of conviction was a violation of 18 U.S.C. § 922(g), it was determined that McCain qualified as an armed career criminal pursuant to 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4(a).[6] PSR ¶ 18. Accordingly, McCain's total offense level was ultimately determined to be 32. PSR ¶ 20. Based on a total offense level of 32 and a criminal history category of VI, the guideline sentence range was a term of imprisonment of 210 to 262 months. PSR ¶ 60. The statutory mandatory minimum and maximum term for Count One was 15 years imprisonment, pursuant to 18 U.S.C. § 924(e)(1). PSR ¶ 70. The court ultimately sentenced McCain to 250 months imprisonment, followed by a 4 year term of supervised release. (Transcript of Sentencing Hearing, June 22, 2006 [hereinafter Sentencing Hr. Tr.] at 6.) The Judgment Order was signed and entered on June 26, 2006; McCain did not note an appeal. See Docket Entry No. 39.

On June 12, 2007, McCain filed this § 2255 motion, pro se, claiming trial counsel provided ineffective assistance in that (1) he failed to object to several convictions in the PSR; and (2) he

---

[6] The prior felony convictions that qualified McCain as an armed career criminal consisted of a March 22, 1973 conviction for Common Law Robbery, a May 14, 1974 conviction for Breaking and Entering, and a May 27, 1992 conviction for Robbery With a Dangerous Weapon.

4

failed to file an appeal. On October 22, 2007, the court entered a Memorandum Opinion and Order ordering an evidentiary hearing on the issue of whether McCain asked his attorney to file an appeal. Further, finding that the remaining claims in a habeas petition should be dismissed without prejudice if a district court grants a petitioner's habeas motion due to counsel's failure to file a direct appeal, the court did not reach the merits of McCain's other grounds for relief. See Docket Nos. 15, 17. An evidentiary hearing was held on February 27, 2008. See Docket No. 24.

## II.

At the evidentiary hearing, Dorsey testified that he met with McCain on June 20, 2006, two days prior to the sentencing hearing, at the Roanoke City Jail. Dorsey admitted that he did not provide McCain with a copy of the PSR prior to the June 20, 2006 meeting, but contended that they "went over it page by page." During that meeting, Dorsey and McCain reviewed McCain's PSR, discussed the guideline range, and the potential career criminal enhancement.[7] Dorsey recalled that McCain mentioned that he had suspected that he might qualify as a career criminal and that, accordingly, he wanted to plead not guilty to the firearm charge. Dorsey testified that McCain agreed that no objections would be made to the PSR. Dorsey did not take notes documenting this meeting.

Dorsey related that McCain assumed he would receive a fifteen year sentence and was surprised when he received a sentence of 250 months. Dorsey testified that, directly subsequent to the June 22, 2006 sentencing hearing, McCain informed him that he had received "too much time" and informed Dorsey, for the first time, that he did not use a dangerous weapon during the incident that resulted in the May 27, 1992 Robbery With a Dangerous Weapon conviction, one of the prior

---

[7] Dorsey recalled that the United States Attorney had provided him with a document detailing McCain's criminal history and noting that it was likely that McCain would be considered an armed career criminal for sentencing purposes.

5

felony convictions that qualified McCain as an armed career criminal. McCain admitted that he pleaded guilty to the 1992 charge and Dorsey informed McCain that, except in limited circumstances not present at that time, they could not re-try the charge. Dorsey further informed McCain that they had no basis on which to appeal his current conviction because Dorsey did not raise an objection to the 1992 conviction at any time during the proceedings. Moreover, Dorsey noted that McCain was sentenced within the appropriate guideline range. Dorsey testified that McCain indicated that he understood and when Dorsey stated, "We're clear that I am not noting an appeal. You agree with that right?," McCain answered in the affirmative. Dorsey specified that he could not recall whether the conversation directly subsequent to the sentencing hearing occurred at counsel's table or in the holding cell area and indicated that he did not take notes documenting the conversation. Dorsey further testified that noting an appeal would not have been a problem, that McCain had an absolute right to appeal, and he would have done so had McCain requested an appeal. Dorsey indicated, however, that it was his understanding that McCain did not want to note an appeal. Dorsey stated that, to his knowledge, he did not receive any phone calls from McCain or his family requesting that an appeal be noted.

Dorsey further testified that he subsequently received a letter from McCain post-marked July 11, 2006, and dated July 10, 2006.[8] Dorsey noted that the letter was dated and also received outside

---

[8] Dorsey submitted a copy of this letter attached to his affidavit filed with the court. A review of the docket for McCain's criminal case, Docket No. 4:05-cr-00011, reveals that a handwritten copy of the letter was received by the court on July 17, 2006, and docketed as entry #44. The undersigned notes that McCain submitted with his petition what appears, at first glance, to be a letter identical to the letters sent to Dorsey and the court. The letter that McCain submitted includes the same content as Dorsey's submitted letter and the docketed letter but is clearly not an exact copy as the sentences and pages break at different portions of the text. Moreover, the date on McCain's submitted letter appears to have been tampered with after it was written to change the date from July 10, 2006, to June 23, 2006. The undersigned further notes that all three of the letters are titled "Monday morning at 6:00 A.M."; however, July 10, 2006, was a Monday, and June 23, 2006, was not a Monday.

There is some question as to whether the letter received by the court on July 17, 2006, could have been
(continued...)

6

of the ten day window within which to file an appeal. In that letter McCain accused Dorsey of ignoring his request to appeal and conspiring with the prosecutor. Shortly thereafter, Dorsey visited McCain at the Roanoke City Jail to discuss the letter. Dorsey testified that during the visit they had a conversation similar to the one they had engaged in directly subsequent to the sentencing hearing. McCain complained that Dorsey should have objected to the 1992 Dangerous Weapon conviction and Dorsey again informed McCain that the issue could not be appealed because it was not objected to during the proceedings. Dorsey stated to McCain that he did not object to the conviction because McCain did not inform him about the potential issues surrounding the conviction. Dorsey informed McCain that, if McCain felt as if Dorsey had provided ineffective assistance during the guilty plea and sentencing proceedings, he could file a § 2255 motion or a bar complaint, or could sue Dorsey civilly. Dorsey also discussed the possibility of noting a delayed appeal.

Dorsey also noted that at some other unspecified time he specifically questioned McCain as to one of the other prior felony convictions that qualified McCain as an armed career criminal.

---

[8](...continued)
construed as a notice of appeal or as a motion for an extension of time in which to note an appeal. With or without a motion, the district court may grant an extension of time in which to file a notice of appeal of up to thirty days upon a showing of excusable neglect or good cause. Fed. R. App. P. 4(b)(4); United States v. Reyes, 759 F.2d 351, 353 (4th Cir. 1985). McCain's letter was received by the court within the excusable neglect period. See United States v. Reyes, 759 F.2d 351, 354 (4th Cir. 1985) (citing Shah v. Hutto, 722 F.2d 1167 (4th Cir. 1983)) (a motion to extend the time must be filed no later than thirty days after the expiration of the original appeal period). However, McCain's letter was not addressed to the court, did not specifically request an appeal, made no mention of the appellate court to which the appeal would be taken, and did not specify the order or judgment from which he was appealing as required by Federal Rule of Appellate Procedure 3(c). See United States v. Little, 392 F.3d 671 (4th Cir. 2004) (finding that an informal letter sent to the court should not be construed as a notice of appeal where the letter made no reference to the Fourth Circuit, or any circuit or appellate court, inmate did not specify any order from which he was appealing, and inmate requested that the district court act on a Rule 35 motion). The United States Court of Appeals for the Fourth Circuit has held that the policy of construing notices of appeal liberally applies "especially" to pro se filings. United States v. Garcia, 65 F.3d 17, 19 (4th Cir. 1995). This principle "does not, however, excuse noncompliance with the Rule." Smith v. Barry, 502 U.S. 244, 248 (1992). Indeed, if anything, the letter could easily have been construed as a § 2255 motion due to the specific mention of § 2555 and the many claims of ineffective assistance of counsel. Moreover, regardless of whether or not the letter could have been construed as a notice of appeal or a motion for an extension of time in which to note an appeal, as the undersigned will illustrate, there were no non-frivolous grounds for appeal.

Dorsey recollected that he noticed that the date of the offense seemed much earlier than the date of the conviction, but McCain informed him that he was an adult at the time of the offense. Dorsey testified that the issue of any prior offense being committed while McCain was a juvenile was never mentioned at any other time. Dorsey testified that he was not aware of McCain's claims that he was a juvenile at the time he committed the offenses that resulted in the March 22, 1973 conviction for Common Law Robbery and the May 14, 1974 conviction for Breaking and Entering until McCain's § 2255 petition was filed.

### III.

McCain testified at the evidentiary hearing that Dorsey did not review the PSR with him during the June 20, 2006 visit at the Roanoke City Jail. McCain alleged that Dorsey did not even take a seat during the brief ten minute visit. McCain stated that Dorsey promised to make objections to the report but failed to do so during the sentencing hearing. McCain did not specify what objections were discussed. McCain alleged that he did not see the PSR until his case manager at his current place of incarceration agreed to let him look at the PSR copy in his file.

McCain further testified that he and Dorsey never had a conversation directly subsequent to the sentencing hearing. McCain alleged that, once he was taken back to the holding cell area subsequent to the hearing, he requested that the United States Marshals retrieve Dorsey, but the Marshals indicated that they could not find Dorsey. McCain alleged that he attempted to contact Dorsey by telephone but that he was never able to get in touch with him.

McCain admitted that Dorsey visited him at the Roanoke County Jail some time after July 15, 2006, but contended that Dorsey never discussed the possibility of noting a delayed appeal. McCain contended that he never agreed that an appeal should not be noted.

8

When cross-examined by the United States Attorney, McCain conceded that he was aware that Dorsey did not note any objections to the PSR at the sentencing hearing, but that Dorsey "wouldn't let [him] say anything." McCain further conceded that when he had the opportunity to personally address the court at his sentencing hearing, he failed to raise any ineffective assistance of counsel concerns or inform the court about the alleged mistakes in the PSR. McCain also admitted that he was born June 9, 1954, and that he pleaded guilty to the offenses that resulted in the March 22, 1973 conviction for Common Law Robbery and the May 14, 1974 conviction for Breaking and Entering.

## IV.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must first show that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, McCain must prove that counsel was ineffective, and but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470). The inmate need not show a reasonable probability of success on appeal. See Peguero v. United States, 526 U.S. 23, 28 (1999).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S.

9

at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel has not consulted with defendant, the court must then determine whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id.

Not every failure to consult results in constitutionally deficient performance. Id. at 479. Rather, counsel only has a constitutionally imposed duty to consult where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. Nonetheless, despite the fact that a defendant pleaded guilty, the court must consider such factors as whether the defendant received the

10

sentence bargained for as part of the plea and whether the plea agreement waived his right to appeal. Id.

There is no evidence in the record, beyond McCain's testimony, supporting McCain's contention that he asked Dorsey to note an appeal. The undersigned finds McCain's testimony simply unbelievable due in large part to McCain's lack of credibility as evinced by the record. First, McCain complains that he told Dorsey to file an appeal directly subsequent to the June 22, 2006 sentencing hearing, but then alleges that a conversation between he and Dorsey did not occur until some time after July 15, 2006. Moreover, McCain's allegation that he never saw, much less reviewed, the PSR is difficult to believe and is belied by McCain's own allegations that he informed Dorsey prior to sentencing of the potential inaccuracies in the PSR. The undersigned finds it curious that McCain could inform Dorsey of the alleged mistakes in the PSR and request that Dorsey make objections without reviewing the report. Furthermore, McCain is suddenly questioning offenses that he previously admitted that he committed and to which he pleaded guilty. McCain is either being untruthful to this court or was being untruthful at his previous guilty pleas. Either alternative raises credibility concerns. The undersigned also notes that it appears that, in an attempt to bolster his claim that he requested an appeal within the requisite time period, McCain provided the court with a copy of a letter dated June 23, 2006, the day after the sentencing hearing and within the time period to file an appeal, when the record suggests that the letter was sent some time in mid July.

Finally, McCain's allegation that he was unaware of his potential career offender status prior to sentencing is clearly contradicted by the record. The United States Attorney informed McCain at his March 9, 2006 guilty plea hearing that he would most likely be considered an armed career criminal for sentencing purposes:

11

> If, however, during the preparation of the presentence report the probation officer determines that you have three prior predicate offenses, three prior violent felonies, or three prior felonies involving drug distribution or any combination thereof, it would make you an armed career criminal classification. And in that event, which we believe to be the case, you would be looking at a minimum of 15 years and a maximum of life imprisonment.

(Guilty Plea Hr. Tr. at 4.) The court also questioned McCain as to his understanding of the career criminal enhancement. The court asked McCain, "And do you understand that the guideline range, if you're found to be a career criminal, is a pretty high range?" (Guilty Plea Hr. Tr. at 11.) McCain answered in the affirmative. The court also asked, "So you're taking a chance as to what the guidelines would be?" (Guilty Plea Hr. Tr. at 11.) McCain again answered in the affirmative.[9] Moreover, at the evidentiary hearing, Dorsey testified that he discussed McCain's likely status as an armed career criminal during the June 20, 2006 meeting at the Roanoke City Jail.

The undersigned also finds McCain's testimony at the evidentiary hearing that he did not know what convictions contributed to his career offender status until his incarceration to be incredible in light of the record. First, Dorsey testified that he reviewed the PSR with McCain prior to the sentencing hearing, which contained sufficient information concerning the convictions. More importantly, the court clearly informed McCain at his sentencing hearing what convictions were used in this determination. The court stated:

> As has been pointed out, Mr. McCain, you have got a very substantial criminal record. And the crimes, particularly the ones that counted against you for your status as an armed career criminal, were serious crimes involving robbery, and then a prison escape in North Carolina, then possession with intent of marijuana and cocaine, another similar charge, and then there are numerous arrests.

---

[9] The undersigned further notes that this portion of the record clearly indicates that McCain was well aware of his potential sentence when he entered the plea of guilty.

12

(Sentencing Hr. Tr. at 5-6.) McCain failed to raise any ineffective assistance of counsel claims or inform the court of any potential objections to the PSR after this statement by the court or at any time during the sentencing hearing.

Accordingly, because the record is riddled with inconsistencies on the part of McCain, the undersigned finds incredible and rejects McCain's argument that he requested his attorney to file an appeal. Even though the record does not contain any evidence other than Dorsey's testimony to support Dorsey's contention that he consulted with McCain directly subsequent to the sentencing hearing and that it was agreed that no appeal would be noted, the undersigned credits Dorsey's testimony. The undersigned notes that the better practice would be to confirm this understanding in writing with the client, however. Although that was not done in this case, it does not rise to the level of a constitutional infirmity. In light of all these considerations, the undersigned recommends the court find that Dorsey was not deficient and that McCain is not entitled to relief as to this claim.

## V.

The undersigned further finds that McCain's remaining ineffective assistance of counsel claims do not have merit. As noted above, to establish ineffective assistance, McCain must prove that Dorsey's performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a "strong presumption that counsel's performance falls within a wide range of reasonable professional assistance." Id. at 689.

The undersigned can find no evidence in the record to support McCain's contention that the offenses that resulted in the March 22, 1973 conviction for Common Law Robbery and the May 14, 1974 conviction for Breaking and Entering were committed when he was a juvenile. McCain

13

provides no factual support for this contention in any of his submissions to the court and nothing established at the evidentiary hearing supports such a claim. McCain admitted at his Guilty Plea hearing on March 9, 2006, that he was "51 years old." (Guilty Plea Hr. Tr. at 5.) McCain admitted at the evidentiary hearing that June 9, 1954 was his correct birth date, and that he pleaded guilty to both the March 22, 1973 Common Law Robbery offense and the May 14, 1974 Breaking and Entering offense. A 1977 indictment for possession of a firearm by a felon indicates that the Common Law Robbery offense occurred on March 9, 1973, and the indictment for the Breaking and Entering offense indicates that the offense occurred on November 23, 1972. Thus, according to McCain's own admissions, he was over eighteen years old on both of the offense dates. McCain offered no evidence to the contrary and merely suggested that the United States Attorney was incorrect as to the offense dates by alleging that she needed the police reports, rather than the indictments, to prove the offense dates. Moreover, McCain fails to even allege, much less prove, that he informed Dorsey of his, admittedly unsupported, concerns that he was a juvenile at the time that he committed the offenses. Accordingly, counsel was not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987).[10]

McCain further complains that Dorsey did not object to or investigate the 1989 Robbery with a Dangerous Weapon conviction, the third conviction that contributed to his armed career criminal status. The 1989 North Carolina indictment charged McCain with using a "round iron bar exceeding eleven (11) inches in length" during the course of robbing the Person County Sheriff's Department

---

[10] The undersigned notes that the lack of evidence supporting McCain's claims that the offenses that resulted in the March 22, 1973 conviction for Common Law Robbery and the May 14, 1974 conviction for Breaking and Entering were committed while he was a juvenile further discredits his testimony.

14

and threatening the life of Ray Fox during an escape attempt in violation of the North Carolina General Statute § 14-87. (Mot. Dismiss, Attach. 1 at 8.) McCain alleges that he was innocent of this charge and that an another inmate by the name of Jeffery Cates threatened Fox with the iron bar during the escape attempt.[11]

With one limited exception, a prior state court conviction may not be challenged in a federal sentencing proceeding. The United States Supreme Court has noted in the context of a challenge to a sentencing enhancement based on two state convictions:

> Thus we have held that if, by the time of sentencing under the ACCA, a prior [state] conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence . . . . This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings . . . . No other constitutional challenge to a prior conviction may be raised in the sentencing forum.

Daniels v. United States, 532 U.S. 374, 382 (2001) (citing Custis v. United States, 511 U.S. 485, 496-97 (1994) (internal citations omitted)). The Court explicitly held in Custis that the right to collaterally attack a prior criminal conviction in a subsequent proceeding for enhancement purposes is limited to the actual denial of counsel, not merely ineffective assistance of counsel. Custis, 511 U.S. at 496. Thus, McCain's allegation of actual innocence would not have supported a challenge to the 1989 prior conviction during sentencing on his instant federal offense. Moreover, the record, including the PSR and the 1989 conviction judgment and commitment order, clearly indicates that McCain was appointed counsel during the adjudication. Therefore, any claim by McCain that he was

---

[11] McCain further alleges that he pleaded guilty to the "conspiracy to escape" charge but that he "never plead[ed] guilty to an assault and robbery" charge. (Pet. Mem. at 7.) This contention is clearly contradicted by the judgment and commitment order provided by the government which indicates that McCain pleaded guilty to both charges. Once again, the undersigned notes that this discrepancy harms McCain's credibility.

15

not provided with counsel during the proceeding would be unlikely to succeed. Furthermore, Dorsey testified that McCain did not inform him of any potential issues concerning the 1989 conviction until after the sentencing hearing. Accordingly, Dorsey was not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton, 826 F.2d at 1359.

Thus, in light of all these considerations, the undersigned recommends the court find that Dorsey did not provide ineffective assistance in failing to object to the March 22, 1973 conviction for Common Law Robbery, the May 14, 1974 conviction for Breaking and Entering, and the May 27, 1992 Robbery With a Dangerous Weapon conviction.

## VI.

Based on the foregoing, the undersigned finds that McCain has failed to establish any credible evidence which suggests that counsel provided constitutionally deficient assistance in failing to note an appeal. The evidence establishes that McCain was advised of his right to appeal by the court, counsel consulted with him on that subject, and he expressed no desire to appeal. In reaching this finding, the undersigned finds most important the facts that McCain entered into a plea agreement and received certain benefits therefrom, there were no non-frivolous grounds for an appeal, and McCain's testimony to the contrary is unconvincing. Further, the undersigned finds that McCain's remaining claims for relief are without merit. Accordingly, the undersigned recommends that respondent's motion to dismiss be granted and that McCain's motion for relief, pursuant to 28 U.S.C. § 2255, be dismissed in its entirety.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation

16

Case 7:07-cv-00301-JLK-mfu   Document 26   Filed 03/25/08   Page 16 of 17   Pageid#: 141

within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send copies of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 25th day of March, 2008.

_____
United States Magistrate Judge

17

Case 7:07-cv-00301-JLK-mfu   Document 26   Filed 03/25/08   Page 17 of 17   Pageid#: 142